JOHN WALKER *et al.*, Appellants, v. CHARLES E. BACON *et al.*, Respondents.

*Limitations.*—In an action by a purchaser under a judgment, execution and sheriff's sale, against defendants in possession under a deed from the judgment debtor, alleged to be fraudulent as against creditors, the statute commences to run from the date of the possession taken under the fraudulent deed.

*Limitations—Disability.*—Where the statute of limitations has run against a claim to land by tenants in common, if they join in the action, the disability of one tenant will not avail his co-tenant, but both will be barred. (Keeton's heirs v. Keeton's administrator, 20 Mo. 530–544. Affirmed.) See note at end of the case.

*Appeal from St. Louis Land Court.*

Plaintiffs by amended petition alleged in substance, that on the 1st June, 1853, they were entitled to the possession of four hundred and eighty arpens, in Bonhomme township, St.

Louis county, on the southern shore of the Missouri river, being the same conveyed by Alexander McCourtney and wife to John McCourtney, and recorded in Book E, page 35, of St. Louis county records; that on the 30th March, 1829, John McCourtney, being still the legal owner and entitled to the possession of said premises, conveyed, through the sheriff of St. Louis county, by sale, under execution against said John McCourtney, to Josiah Spalding, by deed duly acknowledged and recorded; and afterwards, on the 28th October, 1829, by duly acknowledged and recorded deed, said Spalding and wife conveyed said premises to Thomas Sloan, one of plaintiffs, and to Soloman G. Krepps, the ancestor of the other plaintiff, as tenants in common, whereby they became entitled to the possession of said land; and defendants on the 10th June, 1853, entered into said premises, and claimed to hold them under one Martin McCourtney, deceased, formerly husband of defendant, Ann McCourtney, and lessor of the other defendant, James E. Bacon.

Plaintiffs alleged further that said Martin McCourtney in his life-time, and at his death in May, 1853, claimed to hold said land under a voluntary deed from John McCourtney, who was his father, which deed, dated 1st January, 1822, was wholly without consideration, fraudulent and void as against plaintiffs in the judgment under which said Spalding bought said land, and fraudulent and void as against said Spalding, purchaser under said judgment and execution, and also as against plaintiffs, who claim through said Spalding; and plaintiffs also alleged, that, at the time of said voluntary conveyance by said John to said Martin, the said John was greatly in debt and insolvent; and said defendants being now in possession of said premises, unlawfully withhold the possession of the same from plaintiffs, to their damage, &c.; and plaintiffs ask for judgment of possession and for damages.

Defendants deny that plaintiffs are entitled to possession as alleged, and have no knowledge or information whether, on 30th March, 1829, said John McCourtney, through the sheriff, conveyed said land to said Spalding; nor whether said deed

was duly acknowledged and recorded; nor whether Spalding and wife conveyed to Sloan and Krepps as alleged; nor whether this deed was acknowledged and recorded as alleged.

Defendants deny that the deed of John McCourtney of 1st January, 1822, to Martin McCourtney was wholly without consideration, fraudulent and void as against plaintiffs in the judgment named, said Spalding, and plaintiffs; also, that, at the time of said conveyance from said John to said Martin, said John was greatly in debt and insolvent; and deny that defendants unlawfully withhold, &c.

Defendants also allege that they, and those under whom they claim, have had peaceable and undisturbed possession of said premises for more than twenty years next before commencement of this suit, under a claim of title good as against all the world, and which possession is adverse to plaintiffs and all others, and they deny they unlawfully withhold, &c.

The instructions are given in the opinion of the court.

*M. L. Gray*, with *J. D. Coalter*, for appellants.

I. The judgment of the St. Louis Circuit Court in favor of Adam Jacob's administrator v. John McCourtney should have been admitted in evidence.

II. John McCourtney's application for the benefit of the insolvent law of Pennsylvania should have been admitted in evidence.

III. The injunction bill of Martin McCourtney and Thomas Sloan and Krepps should have been admitted in evidence as a whole.

Defendants were in privity with said Martin and claimed under him by descent, and were therefore bound by his statements about his title. (1 Greenl. Ev. 23, 189, and authorities therein cited.)

The bill was sworn to by Martin McCourtney, and thus is brought fully within the rule, and the whole of it should have been read in evidence. (1 Greenl. Ev., § 551, and note 4, and authorities there cited.)

IV. The statute of limitations did not begin to run against plaintiffs, Sloan, and Krepps, the ancestor of the other plaintiffs, till they acquired title through sheriff's sale, in March, 1829. (See limitation act of 17th December, 1818 ; 1 Territorial Laws, p. 598, and 2 vol. R. C. 1825, p. 511 ; 26 Mo., p. 291 & 300; 3 Conn. R. 191.)

Until such title was acquired, plaintiffs had no right of action. The right of action accrued only when the sheriff made a deed to Spalding in March, 1829.

Defendants seem to admit this proposition.

V. The first instruction refused to plaintiffs should have been given. The proposition stated in the instruction is that possession under a void and fraudulent deed cannot be made available under the statute of limitations against a party claiming under a valid deed. The authorities are numerous, and, I believe, uniform, in favor of this position. They are collected in Tillinghast's, Adams on Ejectment, in Appendix, from page 455 to page 560, of 4 ed., 1854, with Waterman's notes, top paging. Also, when possession began in or by a fraud, or fraudulent deed. (See same book, top page 560 to 564.)

VI. The second instruction refused to plaintiffs should also have been given. The proposition contained in it seems to me to be so plain that it needs no argument. If the conveyance was fraudulent and void against Jonathan Walton, the creditor, it must be equally fraudulent against the purchaser under Walton's judgment, else Walton could not get the benefit of the fraud by a sale of the property. (See 22 Mo. 193 ; 23 Mo. 579 ; 27 Mo. 560.)

VII. Also, the third instruction refused should have been given. It would be monstrous to say that defendants could stop the prosecution of a suit for the recovery of the land by injunction for five years, and when said obstacle, interposed by defendant, was removed by the courts, that defendant could then turn round and plead this very delay as a bar to plaintiff's recovery. To permit this, would be enabling defendants to take advantage of their own wrong. If such

be the law, a defendant need only get an injunction and keep it alive by appeal or otherwise till time enough has elapsed to protect him, then plead the statute, and he would be safe. I do not think the courts would permit themselves to be used to perpetuate such injustice.

Our statute declares the time thus lost shall not be counted to a defendant. (13 Vt. 288; 1 Maryland Chy. Dec., p. 182; 2 Stockton, Chy. R., 347; see, also, last proviso of 1 sec. of limitation act of 1825, R. C. 1825, 2 vol., p. 511.) This prevents a defendant, or those in privity with him, from taking advantage of their own delay. A party cannot obstruct the bringing or maintaining of an action and then avail himself of that obstruction.

VIII. Plaintiffs' fourth instruction, refused, should have been given. The ejectment suits brought in April, 1842, were in time, and were pending till the death of defendant. Before his death was suggested on the record in said suits, the present suit was brought, so that really there was no lapse of time at all from the termination of former suits and commencement of this. The courts have adopted the rule as stated in the instruction. (Ang. Lim., p. 344, 5 & 15; 5 Wend. 513; 10 Wend. 278; 3 Caine's Opinions of J. Thompson & Kent, pp. 202–7.)

IX. Plaintiffs' fifth instruction, refused, should have been given. (1 Ter. Laws, p. 543, § 2.) John McCourtney's deed to Martin was dated and acknowledged January 1, 1822, and not recorded within three months. The above statute declares void as against a subsequent deed.

X. Defendants' first instruction given was erroneous on the acts of the case before the court. Plaintiffs claim that the ejectment suit brought in 1842 was in time, and that that suit stopped the further running of the statute till the death of Martin McCourtney was suggested on the record, which was not till December, 1853. Before his death was suggested on the record, this suit was brought on to August, 1853.

As this suit was brought against the widow of Martin McCourtney even before his death was suggested on the record of

the other suit, there was no laches on the part of plaintiffs, and the statute ought to be no bar to plaintiffs, if the first suit brought in 1842 were in time. The instruction should have required twenty years' possession prior to the first suit brought in 1842.

The instruction was erroneous again in not noticing the nearly five years that plaintiffs were enjoined from prosecuting their ejectment by Martin McCourtney, to-wit., from April, 1847, to October, 1851.

This time of the continuance of the injunction ought not to be counted to defendants, and the instruction was erroneous in not excepting this period. (In § 6, art. 3, of act of limitations, of 1835, page 395; also, § 6, art. 3, of Laws of 1845, p. 713; also, last proviso of § 1 of limitation law of 1825, p. 511, of 2 vol.; 1 Maryland Chy. Dec., p. 182; 2 Stock. Chy. Rep., p. 347; 13 Vt. 288.)

Plaintiffs claim—1. That the time of the pending of the first ejectment suits—that is, from 11th July, 1842, to December, 1853—cannot be counted to defendants. If this position be right, then defendants' first instruction, and also their third instruction, were erroneous.

2. That, at any rate, the time from April, 1847, to October, 1851, that plaintiffs were restrained by injunction from prosecuting their actions at law, cannot be counted to defendants. Therefore, defendants' first instruction, and also fifth instruction, were erroneous and should not have been given.

The case was submitted for respondents upon a written brief prepared by *Trusten Polk*, late Senator from this State in the United States Senate.

I. The court committed no error in excluding the record of the proceedings in insolvency.

II. The court was right in excluding from the jury so much of the chancery proceedings in the case of Martin McCourtney v. Sloan and Krepps, as it refused to allow to be read.

III. The opinion of the court was properly excluded. It

certainly could not have been offered on any other hypothesis than that it was a part of the record.

There was no error in excluding from the jury the judgment in favor of Jacobs v. John McCourtney.

IV. The plaintiffs' right of action accrued on the 30th of March, 1829, that being the date of the deed of Sheriff Simpson to Josiah Spalding. The statute of limitations applicable to the case, therefore, is that of 1825 ; (see Code of 1825, p. 511;) for the Code of 1845 provides that where the right of action had accrued at the time of the enactment of that Code it should be governed by the Code of 1835, and not by that of 1845. (See Code of 1845, p. 721, § 16.)

And the Code of 1835, where the cause of action had accrued at the time of that enactment, remits the party to the statute of 1825. (See Code of 1835, p. 396, § 11.)

But the provision of the statute of 1825, which allows plaintiffs who have commenced their suit within the time limited by the act, and who have become non pros., to commence another suit within one year after so becoming non pros., does not embrace action for or concerning real estate. (Code of 1825, p. 510, § 1, and p. 511, § 2 & 3.)

The court below, therefore, committed no error in refusing the third and fourth instructions prayed by plaintiffs, nor in giving the third and fifth instructions prayed by the defendants. These instructions are of the same tenor and upon the the same point ; they are therefore to be judged by the same rules.

On the trial of this cause, the defendants had the right to invoke and interpose, in bar of the plaintiffs' right to recover, the statute of limitations, the lapse of twenty years, without reference to any other suit, unless the statute itself allowed it.

We have seen that, by the act of 1825, the statute in regard to actions concerning real estate contains no such provision. The institution of a prior suit, therefore, could not prevent the statute from running against this one.

Moreover, the suits are not between the same parties. In the former suits, Sloan alone is plaintiff; but in this, the heirs

of Solomon G. Krepps are joined with him as co-plaintiffs. In one of the former suits, Martin McCourtney alone is defendant, and in the other, Goodwin was defendant; and then, on his own motion, McCourtney was admitted to defend. In this suit, however, James E. Bacon was sued as defendant, and Henry McCourtney was admitted to come in to defend.

V. There can certainly be no reason for claiming that the institution of the suit in chancery, by Martin McCourtney, under whom the defendants held possession, in order to protect his possession and to quiet his title against Sloan and the heirs of Krepps, is any reason why the statute of limitations should not run against the latter. If the circumstances called for it, their vigilance might protect them against the operation of the statute.

VI. But whatever may have been the effect of the actions of ejectment mentioned in plaintiffs' fourth and defendants' third instruction, if this suit had been brought by Thomas Sloan alone, without joining the heirs of Krepps with him, and even conceding that in such case these actions of ejectment would have protected him against the operation of the statute of limitations, yet they cannot save him from the effect of the statute in this case; for these actions were brought by Sloan alone, without being joined in them by Krepps or his heirs.

Martin McCourtney's possession commenced on the 1st of January, 1822, that being the date of his deed from John. But this record shows that Solomon G. Krepps was in full life as late at least as the 28th of October, 1829, that being the date of the deed from Spalding to Krepps and Sloan, so that the statute of limitations continued, and did run against the heirs of Krepps. And, if the statute ran against the heirs of Krepps, this action being brought jointly with Sloan and the heirs of Krepps as co-plaintiffs, it runs against Sloan as well as the heirs of Krepps. All the plaintiffs are barred alike. (Keeton's heirs v. Keeton's Adm'r, 30 Mo. 544–5, and the authorities there cited by the court.)

VII. The first instruction given by the court on the prayer

of the defendants, is a correct exposition of the statute of limitations as applicable to this case. (Code 1825, p. 511, § 1 & 2; Macklot v. Dubreuil, 9 Mo. 486; Biddle v. Mellon, 13 Mo. 335; Blair v. Smith, 16 Mo. 273; Joyal v. Rippey, 19 Mo. 660.)

The instruction, indeed, adopts the language of the court in the case of Macklot v. Dubreuil, 9 Mo. 486.

VIII. The defendants' third instruction, in regard to the deed from John to Martin McCourtney, is a correct declaration of the law governing the case. It is couched in the very words of the statute in force at the date of the deed against fraudulent conveyances. (1 Terr. Laws, p. 439, § 2.)

And this court has decided that where an instruction is given with reference to a particular statute, it is better that it should use the language of the statute. (Jacobs v. McDonald, 8 Mo. 565.) This the court below has done in the third instruction.

IX. The inferior court rightfully refused plaintiffs' first instruction; because, let it be conceded that the deed from John to Martin McCourtney was fraudulent as against the creditors of the grantor, still the effect could only have been to render it void. It was exactly as if there had been no deed at all— no more. But the uninterrupted possession of the premises by the defendants, and those under whom they claim, for twenty consecutive years, claiming title for themselves against all the world, although they had no paper title, nor pretence of one, was a valid defence and title to them. Nay, such possession would even give a title that would prevail over the paper title. Of course such possession would give title, although the deed under which it was commenced was void. (Biddle v. Mellon, 13 Mo. 335; Blair v. Smith, 16 Mo. 273; Joyal v. Rippey, 19 Mo. 660.)

a. In Keeton v. Keeton, (20 Mo. 530,) the court held, even in a case in equity, that where an administrator, at a fraudulent sale made by him, became the purchaser of slaves belonging to the estate of his intestate and afterwards held them as his own, he was protected by the statute.

*b.* Even though John McCourtney may have intended to defraud his creditors by making the deed to Martin, yet if Martin knew nothing of such fraudulent intent, he is not deprived of the benefit of the statute of limitations. (Gregg v. Sayre and wife, 8 Pet. 244.)

*c.* After the execution of the deed from John to Martin, the latter held the land conveyed by it adversely to John. (Macklot v. Dubreuil, 9 Mo. 477 ; Landis v. Perkins, 12 Mo. 238 ; Page v. Hill, 11 Mo. 149.) And as the plantiffs in this case must stand in the shoes of John, the said Martin held adversely to them and those under whom they claim, and of course the statute of limitations would run in his favor.

*d.* But, at all events, the statute would begin to run against the creditors of John and all claiming under them, in favor of Martin and those claiming under him, from the date of. the discovery of the fraud in the conveyance from John to Martin, dated January, 1822. And this discovery was made as early as the 10th of December, 1822 ; for, on that day, Jonathan Walton commenced his suit against John McCourtney, and attached (as the plaintiffs claim) the same land that had been conveyed in January, 1822, by John to Martin, as still being the property of John, notwithstanding the said conveyance.

*e.* But the defendants asked another instruction upon this point, which the court gave. By this instruction, the possession of the defendant is not allowed to avail him until the date of the deed from the sheriff to Spalding ; and this is certainly as much as plaintiffs had a right to claim.

BATES, Judge, delivered the opinion of the court.

John McCourtney, by deed dated January 1st, 1822, conveyed a tract of land in St. Louis county, Missouri, to his son Martin McCourtney, for the consideration of natural love and affection, and for the better maintenance, support, livelihood and preferment of Martin. This deed was recorded on the 24th day of April, 1822.

Subsequently suit was brought against John McCourtney on the 22d day of December, 1822, and this tract of land, attached as the property of John McCourtney on the 23d day of January, 1823, sold on the 25th March, 1829, to Josiah Spalding, and sheriff's deed to him executed on 30th March, 1829. Spalding conveyed to Thomas Sloan and Solomon G. Krepps on the 28th October, 1829.

On the 11th of April, 1842, Sloan brought two actions of ejectment for the land, one against Martin McCourtney and the other against Henry Goodwin, in which last case Martin McCourtney was, on his own motion, made a co-defendant. On the 4th day of February, 1847, Martin McCourtney and Goodwin filed a bill in chancery praying that Sloan might be enjoined from further prosecuting said actions of ejectment, and that the title of Sloan and Krepps to the land should be vested by a decree of the court in the complainant. A temporary injunction was granted, and afterward a decree was rendered by the Circuit Court in favor of the complainant perpetuating the injunction, from which the defendants appealed to the Supreme Court, where the decree of the Circuit Court was reversed and the complainant's bill dismissed at the October term, 1851. (The case is reported in 15 Mo. 95.)

Martin McCourtney died, and his death was suggested in the ejectment suits brought by Sloan, and the suits dismissed, on the ground that they did not survive against his representatives, on the 16th day of December, 1853.

On the 14th September, 1853, this suit was brought by Sloan and the heirs of Krepps for the same land, against Charles E. Bacon, (who held possession under Martin McCourtney,) and Ann McCourtney, the widow of Martin, has been made co-defendant. The petition sets out the title of the plaintiffs, and alleges that defendants hold under the deed of John McCourtney to Martin McCourtney, and charges that that deed was fraudulent and void as against the plaintiffs, who stood in the relation of creditors of John McCourtney. The answer puts in issue the sheriff's sale and conveyance to

Spalding, and Spalding's conveyance to Sloan and Krepps; and also denies that the conveyance by John to Martin Mc-Courtney was without consideration and fraudulent and void, &c. The answer also set up, in bar of the plaintiffs' right, more than twenty years' possession before the commencement of the suit adverse to the plaintiffs and all other persons.

At the trial, evidence was given that, about 1821, John McCourtney owed debts which it was impossible to collect from him. Evidence was given of possession by Martin Mc-Courtney and his representatives for more than twenty years before the commencement of this suit.

The plaintiffs asked the court to give to the jury the following five instructions, all of which were refused:

1. If Martin McCourtney obtained possession of the land in controversy under a deed which the jury shall consider fraudulent and void, (according to the rule laid down in other instructions,) then he cannot avail himself of the statute of limitations in virtue of a possession thus obtained, as against these plaintiffs claiming under a deed not tainted with fraud.

2. The deed from the sheriff (Simpson) to Josiah Spalding, given in evidence by the plaintiffs as the deed under which they claim the land in controversy, is a deed made by the sheriff under a judgment obtained by Jonathan Walton as one of the creditors of John McCourtney, and the deed thus made entitles the said Josiah Spalding, and all who claim under him, to all the protection which the law affords to creditors against the acts of their fraudulent debtors.

3. In estimating the time during which the statute of limitations would run against the plaintiffs the jury will not take into account the time during which the chancery suit, given in evidence, was pending between Martin McCourtney and Thomas Sloan and Krepps, their ancestors, of other plaintiffs in reference to said land.

4. If it appears from the evidence that the suit commenced by Thomas Sloan, one of the plaintiffs in this case, against Martin McCourtney, under whom defendants hold, the 11th day of April, 1842, was continued until the 16th December,

1853, and that the present suit for the same land was then commenced, defendants cannot protect themselves under the statute of limitations, unless they show that for twenty consecutive years prior to said 11th day of April, 1842, defendants, or those under whom they claim, had possession of said land adverse to plaintiffs and those under whom they claim.

5. If the deed from John McCourtney to Martin, under which defendants hold, was not recorded until three months from its date, then it is void as against the sheriff's deed to Spalding, under which plaintiffs claim, if said deed is subsequent to the other deed, and was recorded within three months from its date.

On motion of the plaintiffs, the court gave these four instructions:

1. If the jury believe from the evidence that, at the time of the execution of the deed of John McCourtney to his son Martin, the said John was in debt, it is a circumstance from which they may infer that the said deed to his son (being on the face of it a voluntary deed without consideration deemed valuable in law) was made with the intent to defraud, hinder or delay his creditors; and if made with such intent, the said deed is fraudulent and void as against creditors.

2. If both plaintiff and defendant claim title from the same man, to-wit., John McCourtney, and if the deed under which defendants hold is void as against the deed under which plaintiffs hold, then, so far as the documentary or paper title is concerned, plaintiffs must prevail against defendants.

3. If Martin McCourtney, under whom defendants claim, has, at any time since his possession of said land, asserted that he claimed to own said land by virtue of a deed from his father, John McCourtney, then these defendants cannot deny the title of plaintiffs, if said plaintiffs show a deed to them from said John McCourtney for same land, and which deed, by the rules laid down in the other instructions, is to prevail over said deed from John to his son Martin.

4. If Martin McCourtney, under whom defendants claim, got possession of the land in controversy by virtue of a deed

from John McCourtney to said Martin, dated 10th January, 1822, and plaintiffs claim by virtue of a deed dated March 20, 1829, from said John McCourtney to Josiah Spalding; and if the jury are of opinion, from the evidence, that the said deed from John to his son Martin is fraudulent and void as against the deed from John by sheriff to Spalding, then the defendants cannot avail themselves of the possession so obtained under the plea of the statute of limitations, until the date of the execution of said deed of 1829.

On motion of defendants, the court gave the following five instructions, to-wit:

1. If the jury find from the evidence that the defendants, and those under whom they claim, have had possession of the premises sued for twenty years consecutively next before the commencement of this suit, holding the same for themselves and against all other persons, the plaintiffs are not entitled to recover.

2. Unless the jury shall find from the evidence that the land attached, in the case against John McCourtney, in the St. Louis Circuit Court, is the same land described in the plaintiffs' amended petition, the plaintiffs cannot recover in this action.

3. The institution of the suits of Mrs. Sloan against Henry Goodwin, and of Mrs. Sloan against Martin McCourtney, the records of which have been given in evidence by the plaintiffs, did not save the running of the statute of limitations against these plaintiffs.

4. If the jury find from the evidence that the deed from John McCourtney and wife was executed and delivered by them to Martin McCourtney at the time it bears date, then the plaintiffs are not entitled to recover in this action, unless they shall have satisfied the jury by the evidence in this case, that said deed was made by malice, fraud, or in collusion, or guile, to the intent, or for the purpose of hindering, delaying or defrauding the creditors of the said John of their lawful claims.

5. The institution or the prosecution of suit in chancery
11—VOL. XXXII.

by Martin McCourtney against Thomas Sloan and Solomon G. Krepps, the record of which has been given in evidence by the plaintiffs in this case, did not prevent or save the running of the statute of limitations against the said plaintiffs in this suit.

The plaintiffs took a non-suit, with leave to move to set it aside; which motion having been overruled, they appealed to this court.

The right of action of the plaintiffs, or those under whom they derive title, occurred on the 30th day of March, 1829. More than twenty years had elapsed from that time to the commencement of this suit, and there being evidence tending to prove an adverse possession by defendants, or those under whom they derive title, during all that time, it rested upon the plaintiffs to show the reasons why that possession was not an effectual bar to the plaintiffs' action.

They propose several different reasons, which will be considered in the same order in which they were proposed.

1. They insist that, as Martin McCourtney entered into possession under a fraudulent deed, he cannot avail himself of the statute of limitations. This view is supported by a number of decisions in other courts; but this court has heretofore given so great an effect to twenty years' possession, uninterrupted and adverse to all the world, (subject to the exceptions mentioned in the statute,) that now it can scarcely be permitted to impair the effect of such a possession by an objection, however meritorious, to its origin. The question is not whether a fraudulent conveyance can be made valid by lapse of time, but whether (an adverse possession being shown) the court will permit any inquiry into the manner of its beginning.

So regarding that subject, the first instruction prayed by the plaintiffs was properly refused.

2. They insisted that the time during which the chancery suit of Martin McCourtney against Sloan and Krepps was pending should not be counted against the plaintiffs, and

3. That the statute ceased to run against them from the

time that Sloan commenced his two actions of ejectment, that is, the 11th April, 1842.

These two reasons may be considered together, and without determining what would have been the consequences if both Sloan and Krepps had been, by the proceeding in chancery, enjoined from prosecuting their claims, or if they had both been plaintiffs in the actions of ejectment, it suffices that as Sloan alone was the plaintiff in the ejectments, and Sloan alone was enjoined by the proceeding in chancery, he alone can derive any advantage from them, or be protected in any right by them. Krepps and his heirs cannot avoid the bar of the statute of limitations by reason of the disabilities of his co-tenant Sloan; and as this action is brought jointly by Sloan and the heirs of Krepps, they cannot avail themselves of the privileges which belong only to one of them. (Keeton v. Keeton, 20 Mo. 544.) Therefore, the third and fourth instructions refused the plaintiffs were properly refused, and the third and fifth instructions given for the defendants were properly given.

The first instruction given for the defendants states the general principle correctly, and though the exceptions to the principle are numerous there do not appear to have been any in this case which should have been stated to the jury.

Having thus disposed of the instructions having reference to the defence of the statute of limitations, it is necessary to examine all the others, the giving or refusal of which is assigned for error. The second and fourth, given on motion of the defendants, are in accordance with the plaintiffs' own view of the case, and contain no error.

The second instruction prayed by the plaintiffs and refused, might well have been given, but its refusal is not such an error as will authorize a reversal of the judgment; the matter of it was not disputed by the defendants, and was in effect given to the jury by the other instructions, particularly the second, given for the plaintiffs.

The fifth instruction asked by the plaintiffs and refused, was inapplicable to the case stated in the petition, which

charged that the deed of John McCourtney to Martin was void for fraud, but did not assail it because it was not recorded within three months from its date.

The plaintiffs offered in evidence several records, which, on motion of the defendants, were excluded by the court. If they had all been given in evidence, the condition of the case before the jury would not have been materially changed, and, as upon the principles governing the case the judgment below should be affirmed, it is unnecessary to examine into the propriety of the exclusion of that testimony.

Judgment affirmed. Judges Bay and Dryden concur.

NOTE.—It will be observed that the amended petition in this case has the aspect of an ejectment, or writ of right, setting out the title, and partially of a bill in equity. While the petition alleges that the deed under which the defendants claim was made in fraud of creditors, and therefore void, they pray no relief against it whatever, but simply ask for possession of the land and damages for the detention thereof, so that it is really an ejectment only. The present suit was commenced in 1851, when the act of March 12, 1849, (Acts 1849, p. 51; continued in the ejectment act of 1855, § 10,) was in force, which provides that in an ejectment where there are two or more plaintiffs, they may recover in the same manner as if they had brought separate action, &c., and that it shall be no objection to a recovery that one or more do not prove any interest in the premises, &c. *Query:* Does it make any difference that one of the plaintiffs, being under disability, may recover by avoiding the bar of the statute, while the other cannot? or, in other words, is the statute confined to the case of *failure of proof* upon the part of the plaintiff; or does it protect the title which remains good because no valid defence is shown, the defence being apparent only?

In Keeton v. Keeton, cited, the judgment was reversed and the case remanded, so that the plaintiff might amend, and thus the party under disability be saved the consequences of the suing jointly with a party barred by statute.—REP.